ERWIN v. LEE ET AL.

[79 South. 104, Division A.]

1. TAXATION. *Redemption from tax sale. Recital of payment.*

Code 1906, section 4338 (Hemingway's Code, section 6972) providing for the redemption of land from tax sales and Code 1906, section 4340 (Hemingway's Code, section 6974), requiring the chancery clerk to indorse on the tax deed each item paid, do not make it the duty of the clerk to collect taxes accrued since the sale so as to make a recital on the deed of payment of such taxes conclusive; Code 1906, section 4338 (Hemingway's Code, section 6972), merely requiring the owner to pay all taxes actually paid by the purchaser.

2. TAXATION. *Tax deeds. Validity.*

The fact that the chancery clerk on a redemption of land from a tax sale erroneously indorsed payment of the taxes for the year

1911 instead of 1909, whereby the owner was misled, did not invalidate a subsequent tax deed for the nonpayment of taxes for 1911.

3. Taxation. *Land subject. Tax sale to individual.*
    When lands are sold for taxes and struck off to an individual,they are not removed from the field of assessment and taxation. In this regard there is a distinction between lands purchased at tax sale by individuals and lands purchased by the state, section 4355 Code 1906, expressly declaring that "land purchased by the state for taxes shall not again be sold for taxes until redeemed."

Appeal from the chancery court of Lincoln county.

Hon. O. B. Taylor, Chancellor.

Suit by Ellen E. Lee and others against W. L. Erwin, to cancel a tax deed with cross-bill by defendant. From a decree for complainants and a dismissal of the cross-bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*P. Z. Jones,* for appellant.

We fail to see that the case of *Faison* v. *Johnson,* 70 Miss. 214, has any bearing on the case at bar. The facts in that case were that the propertyowner arranged with his merchant, Faison, for the payment of his taxes and was led to believe by his merchant that the taxes were paid. The merchant in fraudulent violation of his agreement with the propertyowner, his customer, permitted and allowed the lands to sell for taxes and bought at the sale, endeavoring thereby to acquire for himself, in a fraudulent manner and by fraudulent and unrighteous conduct, the property of the taxpayer, and his customer. The tax deed was set aside (and properly so) on the ground of fraud. The merchant, Faison, had charged on his books the amount of taxes due on these lands against the propertyowner, and notwithstanding this fact, permitted the lands to sell and not only permitted the lands to sell, but, became the purchaser at the sale.

We may add, by way of comment, that in the case at bar there is no testimony of any fraud or collusion between the chancery clerk, the tax collector, and the purchaser, Erwin, appellant here and no fraud of any kind charged or proved against anybody. There was no fiduciary relationship shown to exist between appellant, Erwin, and any of the appellees. There is nothing in the record to show that Erwin in any way attempted by artifice, trick, or devise of any kind or any sort of strategy to acquire this title in an unfair way or to secure any advantage over the appellees by misleading them or deceiving them on any question or proposition and there is nothing to show that any officer connected with the transaction endeavored in any way by collusion or otherwise to bring about this tax sale.

In our judgment the case of *Brannon* v. *Lyon,* 86 Miss. 401, presents also an entirely different question. The thing that defeated the sale was the provision in section 4332, Code of 1906, to the effect that nothing shall invalidate a tax conveyance, "unless it appear that before sale the money legally chargeable on the land was paid or tendered to the tax collector."

It is expressly stipulated by the statute in question that a payment of the taxes or the tender of the taxes before the sale will defeat the conveyance and in *More* v. *Thomas,* 95 Miss. 650, it is stated by this court that sections 4332-4284, Code of 1906, declare what and what alone shall invalidate a sale for taxes. Section 4284 has no application here, because it pertains to the manner in which the roll shall be made up and the form in which the roll shall be kept.

Section 4332 prescribes the form of a conveyance that the tax collector shall give and that no such conveyance shall be invalidated in any court, except by proof first, that the land was not liable to sale for taxes, or second, that the taxes for which the land

was sold had been paid before sale, or third, that the sale had been made at the wrong time or place, and then the concluding part of the section is to the effect that a tender of the taxes would defeat a sale just the same as payment. So, we repeat that in the case of *Brannon* v. *Lyon, supra,* the evidence showed that the taxes were duly and legally tendered to the tax collector before the sale and it was the tender which defeated the tax sale.

In the case of *McGahen* v. *Carr,* 6 Iowa, 331, 71 Am. Dec. 421, the facts were that the county treasurer told the propertyowner's agent that no taxes had been assessed against his land and later, the land sold for taxes for that year and it was held by the court that the tax conveyance could not be invalidated, unless some conclusion or fraudulent connection could be shown between the treasurer and the purchaser.

Counsel for appellees, in addition to the two Mississippi cases, cited several decisions from the courts of other states to which we have not access and, therefore, cannot discuss them. However, we call the attention of the court to the language of Judge MAYES in the case of *Moore* v. *Thomas,* 95 Miss. 651: ''The decisions in other states, whose statutes are different from ours and much in the works on tax titles are wholly inapplicable here where our system is *sui generis* in many respects.'' The doctrine of *Moore* v. *Thomas, supra,* that it is only under section 4332, Code of 1906, provides what defense may be made to a tax collector's deed and that this section is exclusive of all others. (See opinion of Judge MAYES at page 754.)

Inasmuch, however, as counsel for appellees cite from the decisions of the courts of other states, we desire to call the attention of the court to the following: Under the Virginia statute requiring for a redemption from tax sales, that a payment must be made of the

taxes for the year in which the land was sold, and a payment for the year for which it was sold, a certificate of redemption issued by the auditor of state not showing the payment for both years will not invalidate a tax sale. The state is not bound by negligence of its officers. The owner should have tendered the whole amount demanded by the law, if not demanded by the officer. *Harmon v. Steed,* 49 Fed. Rep. 779.

The mistake of the collector in giving the owner of land information that there are no taxes against it, where there is not a complete tender of the full amount necessary to redeem, will not invalidate the subsequent sale. The law presumes that he saw the publication of the delinquent list and, if he neglects to pay his taxes he must take the consequences. *Raley* v. *Guinn,* 76 Mo. 263; *Menesha Wooden Ware Co.* v. *Harmon,* 128 Wis. 177, 107 N. W. 299.

An owner of property which had been sold for taxes who went to the treasurer's office to redeem the same, and was misled by certain facts in respect to the street on which it was situated and by a similarity in the name of the owners, and therefore redeemed the wrong land, taking a certifcate of redemption describing the wrong land, must be held to have directed the application of the money to the redemption of the lot which was actually redeemed, and which did not belong to him, and by his directions and suggestions in respect to the description of the property, he desired to redeem, and to have caused the mistake to have made, or to have been so far instrumental therein that he must be charged with the consequences and bear the blame and results, rather than the county as represented by its treasurer, *Brown* v. *Finley,* 51 Neb. 465, 71 N. W. 34.

These cases establish the proposition that whenever the owner has been negligent a subsequent tax sale chargeable to such negligence on the part of the owner

or his agent cannot be invalidated, applied to the facts of this case.  We find that the complainants are non-residents of the state and entrust their affairs to an agent who is said to have resided at Hattiesburg, Mississippi.  This agent was evidently negligent and not careful in his attention to complanants' business, because the land sold in 1910 for the taxes of 1909.  A redemption was not attempted to be made from this tax sale until nearly two years after the date of the tax sale, in January, 1912, when the taxes for three years, including the year of the sale, had accumulated.  This agent negligently failed to pay and negligently failed to acquaint himself with all of the facts connected with the taxes due and owing by the appellees or, rather, negligently failed to pay all the taxes which he, as a reasonably prudent man, knew was due and owing on the land.

The land was sold for taxes in April, 1912, and the appellant has been in possession of the property since April, 1914, for a period of practically three years before any suit was ever filed attacking the tax conveyance.  This, of itself, shows negligence, indifference, and inattention.

*Brennan & Brennan* and *W. E. Boothe,* for appellee.

For the convenience of the court, we will quote that part of section 4338, Code 1906, providing for the redemption of lands sold for taxes, underscoring those parts thereof we disire to call the court's particular attention to: "4338 (3823).  Conveyances filed and land redeemed.  The tax collector shall file all conveyances of land sold to individuals in the office of the clerk of the chancery court of the county, on or before the first Monday of April, there to remain two years from the day of sale, unless the land be sooner redeemed; and the owner of the land, or any

person for him may redeem the same within two years by paying the clerk regardless of the amount of the purchaser's bid at the tax sale the whole of the amount of tax for which the land was sold, with all costs, and charges consequent upon sale, and also all states and county taxes that have accrued on the land since the sale.''

Section 4340, Code 1906, provides: ''on payment of the redemption money, the clerk shall indorse on the conveyance the word ''concelled'' and sign his name thereto, with the date and amount paid, and shall enter on the conveyance a statement of each item of charge, making up the aggregate amount paid. The clerk shall pay over the amount received by him to those entitled to receive it.''

From the foregoing section it will be seen that the redemption of this land from the Conant sale was in strict accordance with the statute, and the ''cancelled'' tax deed, bearing the signature of the clerk of the chancery court, specifying each item of charge, that went to make up the total amount necessary for redemption, was a receipt in hands of the agent of complainants for the payment of the taxes on the land for the year 1911.

Section 4321, Code 1906, relative to receipts to be given by the tax collector, does not apply to cases of redemption of lands from former tax sales. In such case, section 4338, makes it the duty of the clerk of the chancery court to collect all ''state and county taxes that have accrued on the land since the sale,'' and the redemption having been made on January 15, 1913, the state and county taxes for 1911, were due and payable. The chancery clerk was the only party to whom the agent of the complainants could go to redeem from the Conant sale, and it was his duty to collect, in addition to costs, etc., the state and county taxes then due on the land.

From our examination of the authorities in this state and other states, it seems to be the general rule of law, that where the owner of lands makes an honest effort to pay the taxes due upon his lands, within the time prescribed by statute, and fails therein on account of the misleading statements or representations made by parties whose duty it is to know the facts, a sale of the lands thereafter will be void. *Faison* v. *Johnson et al.,* 70 Miss. 214; *Brannan* v. *Lyon,* 86 Miss. 401.

It was urged in the *Brannan case, supra,* as in the case at bar, that nothing but the prescribed tax receipt as provided by section 3822, Code 1906, could be shown to invalidate a tax sale, but this court, in the case of *Perret* v. *Borries,* 78 Miss. 936, in interpreting this section said: "That it means that such a receipt is the only receipt valid in favor of the collector, and it was never intended to take from one who had actually paid his taxes on his estate for failure of the officer to give the prescribed form of receipt called for by the statute." So far as we know, Wells, the agent of complainants, may have actually paid the taxes on the land for the year 1911, at least the certifcate of the chancery clerk shows that he did. Wells is dead and we were deprived of his testimony.

Under the decisions above cited it was not necessary for complainants to have the prescribed receipt. The receipt of the chancery clerk was all that was necessary. If the taxes for 1911 were in fact paid to the chancery clerk and he failed to turn the same over to the proper officer, his failure or neglect of duty should not deprive the complainants of their land.

We say that the land was redeemed from the Conant sale in strict accordance with the statutes. Every provision of section 4338, Code 1906, was complied with.

We further urge that the judgment of the court below should be affirmed. *Faison* v. *Johnson,* 70 Miss. 214; *Brannan* v. *Lyon,* 86 Miss. 401; *Perret* v. *Borries,*

78 Miss. 934." A *bona-fide* attempt to pay frustated by fault of the tax officer, is equivalent to actual payment, and will bar a sale." 25 Am. & Eng. Emdy. Law, 284. "Sale after payment or tender conveys no title to the purchaser." Ib.

"To authorize a tax collector to sell property to enforce payment of taxes, there must be both a legal disability on the part of the owner to pay the taxes and a legal default in making payment. *Green* v. *Craft*, 28 Miss. 70

"Tender of the taxes by any one who has the right to make payment is effectual to prevent sale, whether the tender is accepted or not."

2 Cooley on Taxation, 808; Black on Tax Titles, section 158. In the case of *Barker* v. *Jackson et al* 44 So. 34, it was held that a sale of land for taxes to the chancery clerk was a void sale, even though the taxes had not been actually paid. In this decision the court also lays down the rule that the three-year statute of Limitations has no application to an illegal purchaser of the land. *McGee* v. *Holmes,* 63 Miss. 51; *Poole* v. *Ellis,* 64 Miss. 555, 1 So. 725; *Jonas* v. *Flanniken,* 69 Miss. 577, 11 So. 319.

Where a person offers to pay the taxes on his land, and is informed by the proper officer that there is no taxes to be paid on such land, and he relies on such statement in good faith, a subsequent tax deed based on such tax will not pass title." *Smith* v. *Davidson,* 23 Idaho 555, 130 Pac. 1071. (Ann Case 1914 D., page 1053.)

"A *bona-fide* attempt to pay all taxes, frustrated by the fault of the treasurer, stands as equivalent of actual payment." *Breisch* v. *Coxe,* 81 Pa. St. 336; *Pottsville Lbr. Co.* v. *Wells,* 157 Pa. St. 5, 27 Atl. 408; *P. S. Nat. Bank* v. *Briswanger,* 59 Wash. 134, 109 Pac. 327; *Gleason* v. *Owens,* 10 Wash. 483; *Africa* v. *Trexler,* 232 Pa. St. 493, 81 Atl. 707.

"It is held in numerous cases that if landowner in good faith applies to the proper officer for the purpose of paying his taxes, and is prevented by mistake, wrong or fault of the officer, such attempt is equivalent to payment. *Hoffman* v. *Auditor General,* 136 Mich. 689, 100 N. W. 180; *Kneeland* v. *Wood,* 117 Mich. 176, 75 N. W. 462; *Haywood* v. *O'Conner,* 145 Mich. 52, 108 N. W. 366; *Nelson* v. *Churchill,* 117 Wis. 10.

From the foregoing decisions both in the state and in other states that have passed upon the question it seems to be the general rule of law, that where there has been an honest effort on the part of the owner of the land to ascertain the amount due, and to pay this amount of taxes upon the land, and he is mislead, deceived or otherwise "frustrated" in his design to pay his taxes, by some act of omission or commission by the official in the position to advise him, then and in such case, the tax deed does not pass the legal title to the land to the purchaser thereof under such conditions. In such case the tax deed is void.

STEVENS, J., delivered the opinion of the court.

Appellees, claiming to be tenants in common of and owners of certain lands situated in Lincoln county, exhibited their bill of complaint against appellant as defendant in the court below, praying for the cancellation of a tax deed executed by the sheriff and tax collector to appellant April 1, 1912, in satisfaction of the unpaid taxes for the year 1911. The defendant answered the bill, and made his answer a cross-bill and prayed that his tax deed be confirmed as against the original complainants. The court decreed in favor of the complainants, and dismissed the cross-bill, and from his action in so doing appellant prosecutes this appeal. In decreeing for the complainants the chancellor directed that they should "pay the defendant the purchase

money and all taxes paid by him on said lands, same to be determined later.'' The pleadings and proof show that the lands in controversy were sold to one F. O. Conant, April 4, 1910, for the unpaid taxes of 1909; that the tax collector's deed to Conant was duly executed and filed with the chancery clerk; and that in January, 1912, one Wells, the agent of appellees, went before the chancery clerk and redeemed the lands from the 1910 sale, and the chancery clerk thereupon marked the Conant tax deed canceled and delivered it to the complainants' said agent. On the back of this canceled tax deed was what purported to be an itemized statement of each item of charges and taxes going to make up the full amount of twenty-eight dollars and thirty-six cents, paid by Wells to the clerk, and embrased in the itemized list are the words and figures, ''Tax for 1911, seven dollars and eighty-eight cents.'' As a matter of fact complainants' agent did not pay to the clerk the taxes for 1911, but did pay the taxes and damages for the year 1909, the year for which the land was sold, and did pay the tax for 1910. Neither the owners nor the chancery clerk paid to the tax collector the taxes duly assessed on the lands for 1911, and, these taxes being unpaid, the tax collector advertized and sold the lands in April, 1912, for the unpaid taxes of 1911, and appellant at this sale appeared and bought in the lands and received the tax collector's deed executed in due form. This is the deed which is now the subject of attack in this suit. Appellees rely upon sections 4338, Code of 1906, being section 6972 of Hemingway's Code, and 4340, Code of 1906, being section 6974 of Hemingway's Code. These sections read as follows:

''The tax collector shall file all conveyances of land sold to individuals in the office of the clerk of the chancery court of the county, on or before the first Monday of May, there to remain for two years from the day of

sale, unless the land be sooner redeemed; and the owner of the land or any person for him, may redeem the same within two years by paying the clerk, regardless of the amount of the purchaser's bid at the tax sale, the whole amount of tax for which the land was sold, with all costs and charges consequent upon the sale, and twenty-five per centum damages upon the amount of tax, and all costs, and also all state and county taxes that have accrued on the land since the sale, and also five per centum on the whole amount of the redemption money; to infants and persons of unsound mind whose lands may be sold for taxes, the right to redeem the same within two years after attaining full age or sanity, from any purchaser thereof on the terms herein prescribed, and on their paying the value of any permanent improvements on the lands made after the expiration of two years from the date of the sale of the lands for taxes.''

''6974. On payment of the redemption money, the clerk shall indorse on the conveyance the word 'cancelled,' and sign his name thereto, with the date and amount paid, and shall also enter on the conveyance a statement of each item of charge, making up the aggregate amount paid; and he shall also note each redemption on his register, with the date and amount paid. The clerk shall pay over the amount received by him to those entitled to receive it, and for a failure shall be liable on his official bond. All of such conveyances not canceled as above provided, shall be delivered to the persons entitled to them after two years from the date of the sale of the land conveyed.''

It is contended that these statutes make it the duty of the chancery clerk to specify each item of charge necessary to redeem from any particular tax sale, and that the canceled tax deed, specifying on the back thereof these separate items of charge, constitutes a receipt in favor of the complainants for the taxes for the year 1911; that it is the duty of the chancery clerk to

collect "all state and county taxes that have accrued on the land since the sale,"and that under the proven facts there is a conclusive legal presumption that the chancery clark did in fact receive the taxes for 1911, and that no tax was therefore due on the lands when the tax collector offered them for sale. It is furthermore contended that, even though the taxes were not in fact paid to the chancery clerk, complainants' were misled by the action of the clerk in making this notation on the back of the canceled tax deed, and that, complainants having been misled, and believing that the tax had been paid for the year 1911, the tax deed in question should be canceled. It appears that the agent, Wells, had died prior to the institution of this suit, and that his testimony was not available. The chancery clerk testified that Mr., Erwin, the appellent in this suit, in fact paid the taxes of 1910, seven dollars and ten cents, and that in redeeming the lands Mr. Wells paid by way of refund this amount of taxes for the year 1910, but that the taxes for 1911 were not in fact paid either to the chancery clerk or his deputy, the clerk, on the contrary, saying:

"It was not the custom in redeeming a piece of land. . . . If you would come in to redeem a piece of land now, I would not collect the taxes for this year. I would only collect the taxes that had already been paid. . . . If the party who bought the land had paid the taxes I would collect it. But if the owner of the property had come in and paid in the meantime I would not collect it."

If affirmatively appears that the state and county taxes for the year 1911 were not in fact paid, and there is no question about the manner in which the tax collector proceeded, or of the time at which or the place where he made sale of these lands in 1912. The sole question is whether he should have sold the lands at all in April, 1912. The lands were duly

assessed on the assessment roll, and the official tax receipt was not taken out by the tax collector and delivered to the owners of the land or to the chancery clerk. The sheriff proceeded in good faith to make sale of lands, which according to his records were delinquent. Appellant, Erwin, in good faith appeared at the sale and bought in the premises. Under the pleadings and the undisputed testimony we see no infirmity in appellant's tax deed. There is very naturally some confusion about the true interpretation of that portion of section 4338, Code of 1906, making it the duty of the owner in redeeming to pay the clerk "all state and county taxes that have accrued on the land since the sale." This section must be construed in connection with our other revenue statutes, and when this is done we believe the legislative intent is clear. This statute means, and is bound to mean, that the owner, when redeeming, must pay the chancery clerk all taxes which have accrued on the land and which have been actually paid by the purchaser and for which the official tax collector's receipt has been issued. When lands are sold for taxes and struck off to an individual, they are not removed from the field of assessment and taxation. The same lands remain liable for the taxes accruing annually thereafter. In this regard there is a distinction between lands purchased at tax sale by individuals and lands purchased by the state. Section 4355, Code of 1906, expressly declares:

"Land purchased by the state for taxes shall not again be sold for taxes until redeemed."

But the sale of these lands to Conant in 1910 did not release the owners from the duty to pay the taxes for 1910 and 1911. They did not in fact pay the tax collector for either of these years. It appears that Erwin paid the taxes for 1910, and that Wells, complainants' agent, thereafter refunded this amount by

paying the same over to the chancery clerk when he redeemed from the Conant sale. No one either paid or tendered to the tax collector the required tax for 1911, and, this being so, it was the plain duty of the sheriff, under other statutes regulating and prescribing his duties, to proceed to sell the lands in April, 1912. These statutes under review nowhere authorize the chancery clerk in the first instance to receive taxes due upon real estate, and to issue in exchange therefor an official receipt. This duty is devolved expressly and solely upon the tax collector, and in the discharge of this duty the tax collector must use a prescribed receipt executed in duplicate, and section 4322, Code of 1906, provides that "any other receipt shall not be valid as evidence."

It is not necessary for us to decide that the chancery clerk might not require the owner of land to pay the taxes that have accrued since the sale and are still unpaid as a condition of redemption, although this is indeed very doubtful. This exact point is not now presented. Surely some one must go to the tax collector and pay or legally tender the amount of taxes. In many cases there is no redemption, and certainly the tax collector is not required and is nowhere authorized, to withhold delinquent lands from the annual tax sale or to postpone such a sale to ascertain whether the owner will redeem from a prior tax sale. As stated, lands sold for taxes to an individual remain for two-year period allowed for redemption subject to assessment and sale just as if they had not been previously sold, and the duty is upon the tax collector to see that the taxes are in fact paid annually. Any other plan would throw our fiscal affairs into confusion. The current expenses of the government must be met as nearly as possible by an annual income. It appears that the memorandum on the back of the Conant canceled tax deed was not in fact signed by the chancery clerk, and proper investi-

gation would have revealed the fact that the taxes for 1911 were then due and unpaid and that no one had received from the tax collector the official receipt. It is not expressly shown that appellees were by this memorandum thrown off guard, or misled, although they some time afterwards received from their agent, Wells, the canceled tax deed. Even if they were misled by this memorandum, it is their misfortune. There must be an actual payment or tender of the amount due. It follows from the views expressed that the tax deed of appellant is good and valid, and that the decree of the learned chancery court must be reversed. There is no occasion to remand the couse, and decree will be given here in favor of appellant, confirming his title.

*Reversed, and decree here for appellant.*