543 So.2d 1164 (1989)
DEFENBAUGH AND COMPANY OF LELAND, INC.
v.
Otto J. ROGERS, an N.C.M., By and Through June Thompson, Guardian, and Stephen L. Thomas, Attorney and Next Friend.
No. 57976.
Supreme Court of Mississippi.
May 10, 1989.
*1165 E. Stephen Williams, Young, Scanlon & Sessums, Jackson, for appellant.
Phillip Mansour, Jr., Mansour & Mansour, Greenville, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Appellee, Otto J. Rogers, a resident of Greenville, Mississippi, and an adjudicated N.C.M., filed a complaint in the Chancery Court of Washington County, by and through his legal guardian, June Thompson, against Defenbaugh and Company of Leland, Inc., a Mississippi corporation engaged in the small loan business. The complaint alleged that the appellant, with actual and constructive knowledge that the appellee was an adjudicated N.C.M., made a loan to him and took a note and deed of trust on real property owned by the appellee as security. The case was tried before the chancellor in Washington County, who entered a judgment in behalf of the appellee cancelling the note and deed of trust and awarding appellee damages, including punitive damages in the amount of $8,753.22, and attorney fees in the amount of $3,250.00, plus out-of-pocket expenses of $88.60. This appeal followed.
The record reflects that appellee was adjudged a non compos mentis in the County Court of Oklahoma County, Oklahoma, on November 27, 1962. At some point thereafter, the appellee moved his residence to Greenville, Mississippi. The record indicates a Mississippi guardian was appointed for him on August 7, 1978, by order of the Chancery Court of Washington County. There is no explanation in the order as to why Otto was adjudged N.C.M.
The events which resulted in this appeal began in the summer of 1985, when a pecan tree fell on the appellee's house, causing damages which appellee sought to repair. The appellee went to a small loan company, appellant Defenbaugh and Company of Leland, Inc., in Leland, Mississippi, to get a loan to, among other things, make the necessary repairs to his house. The appellee met with Defenbaugh's loan officer, Mr. James Sparkman, and made application for a loan. He told Sparkman he owned the house on which the repairs were to be made and would use the house as collateral for the loan. At the initial meeting, Sparkman told the appellee he could make the loan subject to receipt of a good title opinion on the property.
Shortly thereafter, a title opinion made by Defenbaugh's attorney disclosed that the appellee held fee simple title to the said property; that he had received the property from his father's estate; and that the appellee had a court-appointed guardian to manage his estate. At a subsequent meeting, Mr. Sparkman queried the appellee concerning the guardianship and was told that the guardianship had been removed. Mr. Sparkman testified the appellee presented what appeared to be a one-page court order releasing the guardian, who was cited in the title opinion. Mr. Sparkman did not keep a copy of the one-page order.
*1166 On the day the appellee was to finalize the loan at Defenbaugh's Leland office, July 11, 1986, he was driven and accompanied by his nephew, John D. Crittenden. Mr. Crittenden, who is an insurance salesman, wrote a fire policy on the appellee's home and delivered it at the loan closing. He was paid $235.08 from the loan proceeds.
The appellee signed a note for $2,700. Because he wanted to receive the loan proceeds immediately, he signed a waiver of his three-day right to cancel the loan under the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq. and he was given $1,600. The note was to be repaid at $75.00 a month for a three-year period. As a part of the transaction, Defenbaugh took a deed of trust on the appellee's house to secure the loan. Of the loan proceeds, $474.19 was used to pay an existing debt for materials and supplies from the Greenville Lumber Company and $773.41 was advanced directly to the appellee. The remaining balance was used for related expenses, i.e., property insurance and fees.
When the appellee failed to make full payments on the loan, Defenbaugh attempted to collect them on a regular basis. After some difficulty in keeping track of the partial payments made, the appellee, in early 1986, consulted an attorney and asked him to assist in getting his payment record straightened out. The attorney contacted Defenbaugh several times, getting receipts and making partial payments for the appellee. He advised Defenbaugh that the deed of trust was unrecorded and it was at this point, February, 1986, that Defenbaugh proceeded to record its deed of trust.
In May, 1986, Defenbaugh's attorney notified the appellee that foreclosure proceedings would commence if his debt, which was in default, was not brought current. Approximately one week later, May 21, 1986, the appellee had consulted another attorney, who wrote Defenbaugh, advising that the appellee was a N.C.M. and had a court-appointed guardian. A copy of an order partially removing the appellee's disability and allowing him to receive his veteran's benefit check but restricting his right to deal with his real property was attached. The attorney advised Defenbaugh that the note and deed of trust it held were unenforceable since the appellee's guardian had not signed them. He requested the note be returned to the appellee marked "paid" and the deed of trust cancelled.
On May 30, 1986, the same attorney advised Defenbaugh that a foreclosure notice against the appellee had been published in a recent edition of the newspaper. He requested the foreclosure proceedings be stopped or he would institute a suit against them. On June 3, 1986, Defenbaugh's attorney responded stating there would be no further publication and indicated they could resolve the matter without litigation. The appellee's attorney responded the next day by requesting that the deed of trust be cancelled within ten (10) days or suit would be brought against Defenbaugh. Shortly thereafter, on June 18, 1986, the appellee filed suit seeking cancellation of the promissory note, deed of trust, and requesting punitive damages not to exceed $100,000.
The appellant assigns as error:
I.
THE LOWER COURT'S AWARD OF PUNITIVE DAMAGES WAS UNJUSTIFIED, EXCESSIVE AND CONTRARY TO ESTABLISHED LEGAL PRINCIPLES WITH RESPECT TO THE AWARD OF EXEMPLARY DAMAGES.
II.
THE AWARD OF ATTORNEY'S FEES WAS UNJUSTIFIED, EXCESSIVE AND CONTRARY TO ESTABLISHED PRINCIPLES FOR THE AWARD OF SUCH DAMAGES.
III.
THE LOWER COURT'S FINDING THAT DEFENBAUGH HAD "FULL ACTUAL KNOWLEDGE THAT OTTO ROGERS WAS AN N.C.M." WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.

*1167 IV.
THE GUARDIAN FAILED TO COMPLY WITH THE REQUIREMENTS OF § 93-13-27, M.C.A. (SUPP. 1986), AND THE LOWER COURT PROCEEDINGS AND JUDGMENT ARE VOID.
Defenbaugh knew from its title opinion that the appellee had a court-appointed guardian. However, there was no reference in the opinion that he was also a N.C.M. The evidence of record clearly indicates Defenbaugh extended the loan to the appellee after it had resolved, through Mr. Sparkman, that the guardianship had been removed. This was based upon the appellee's representations to Mr. Sparkman. At the time the loan was made there was no indication Defenbaugh knew the appellee was a declared N.C.M. which is significantly different from the knowledge of the guardianship issue.
As to the award of punitive damages this Court has said such an award is permissible only within narrow limits. Consolidated American Life Ins. Co. v. Toche, 410 So.2d 1303 (Miss. 1982). Punitive damages may be awarded if the wrong conduct is intentional or if it results from gross disregard for the rights of the complaining party so as to amount to willfulness. Banker's Life & Cas. Co. v. Crenshaw, 483 So.2d 254, 269 (Miss. 1985); Jesco, Inc. v. Shannon, 451 So.2d 694 (Miss. 1984); U.S. Industries, Inc. v. McClure Furniture Co. of Eupora, 371 So.2d 391 (Miss. 1979); Seals v. St. Regis Paper Co., 236 So.2d 388 (Miss. 1970). See also Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454 (Miss. 1983).
We have held that an award of punitive damages must be supported by the existence of actual damages. T.G. Blackwell Chevrolet Co. v. Eshee, 261 So.2d 481 (Miss. 1972); Mississippi Power Co. v. Jones, 369 So.2d 1381 (Miss. 1979); Allen v. Ritter, 235 So.2d 253 (Miss. 1970). In our opinion, Defenbaugh's actions in reviewing the appellee's loan application and granting the loan were negligent but do not rise to the level of willful disregard for the appellee's rights and do not justify punitive damages. Defenbaugh's loan officer, Mr. Sparkman, upon learning of the guardianship matter, questioned the appellee and, albeit mistaken, was satisfied that the guardianship was no longer in effect based upon representations made by the appellee.
As to the chancellor's finding that upon notification by the appellee's attorney that the deed of trust was unenforceable, they proceeded to record the deed of trust and then commence foreclosure, he erred. Defenbaugh recorded its deed of trust in February, 1986. Foreclosure proceedings were not commenced until sometime later in May, 1986, and it was at that time that the appellee's attorney of record advised Defenbaugh of irregularities in the loan or deed of trust.
After Defenbaugh commenced foreclosure on the appellee's property, and subsequently received notice from the appellee's attorney that there was a problem with the loan, it voluntarily stopped the foreclosure proceedings. The appellant expressed a desire to discuss the matter further with the appellee and avoid the threatened litigation. This was a reasonable request. The appellee, in response, immediately filed his lawsuit.
The appellee, who admitted he spent part of his loan proceeds on beer and liquor for himself and his friends, has not sustained any actual damages.
With reference to the award of attorney's fees, we have said:
As to attorney's fees, the rule in the absence of statute is that they are not recoverable unless the facts are of such gross or willful wrong as to justify the infliction of punitive damages. Cooper v. U.S. Fidelity & Guaranty Co., 186 Miss. 116, 188 So. 6 (1939); Yazoo & M.V.R. Co. v. Consumers' Ice & Power Co., 109 Miss. 43, 67 So. 657 (1915).
Bellefonte Ins. Co. v. Griffin, 358 So.2d 387 (Miss. 1978). See also Grisham v. Hinton, 490 So.2d 1201, 1206 (Miss. 1986); State Farm Fire and Cas. Co. v. Simpson, 477 So.2d 242, 253 (Miss. 1985); Gardner v. Jones, 464 So.2d 1144, 1150 (Miss. 1985). We are of the opinion that the chancellor erred in awarding attorney's fees.
*1168 As to the remaining assignment of error, we note that the Miss. Rules of Civil Procedure are supplanted by the statutory procedure in guardianships. M.R.C.P. 81(a)(9).
Section 93-13-27 (Supp. 1986), provides in part:
All suits, complaints, actions ... for or on behalf of a ward for whom a general guardian has been appointed shall be brought in the name of the general guardian for the use and benefit of such a ward, be such general guardian that of his estate or that of his estate and person or that of his person only. And all such actions, suits or proceedings shall be commenced only after authority has been granted to such general guardian by proper order decree of the Court or Chancellor of the county in this state in which the guardianship proceedings are pending, upon proper sworn petition and supporting oral testimony. A certified copy of said order authorizing such suit or proceedings shall be attached to the complaint or instrument or document originally filed as commencing such actions, suits or proceedings.
The appellant argues that no order was attached to the complaint in this case which authorized the guardian to file the lawsuit and that the statute is mandatory and without the court order authorizing the litigation below the judgment is void.
The lower court erred. However, the error was harmless here. The other assigned errors are dispositive of the case.
At page 21 of his brief, appellee's attorney concedes:
Defenbaugh made a mistake. It was negligent, but it was not guilty of the kind of conduct which justifies the infliction of punitive damages.
Wittingly or unwittingly, Defenbaugh assumed the risk of a voidable transaction by entering into a loan with an individual under a guardianship. The loss of the bargain is punishment enough for Defenbaugh.
The judgment of the lower court in cancelling the promissory note executed by Otto J. Rogers July 11, 1985, in favor of the appellant and deed of trust securing that note, recorded at page 677, Book 1575 of the Washington County Mississippi land records, is affirmed. That part of the judgment awarding punitive damages, attorney's fees and expense money is reversed and judgment is rendered here in favor of the appellant.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.